UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

RYAN K. JONES                                          CIVIL ACTION NO.


VERSUS                                                 JUDGE

RODNEY ARBUCKLE, individually and                      MAGRISTRATE JUDGE
in his capacity as Sheriff of DeSoto Parish,
MONICA CASON, individually and in her official
capacity of DeSoto Parish Deputy Sheriff;
JOHN CLEMENTS, in his individual and official
capacity of DeSoto Parish Deputy Sheriff;
COURTNEY DOWDEN, ADAM EWING, individually
and in his official capacity of DeSoto Parish Deputy
Sheriff, and JAYSON RICHARDSON, individually
and in his official capacities as DeSoto Parish Deputy
Sheriff and DeSoto Parish Sheriff

**COMPLAINT**

This is a Civil Action brought pursuant to the laws of the United States.

1.

Plaintiff is Ryan K. Jones, a person of the age of majority domiciled in DeSoto Parish,

Louisiana.

2.

Defendants are:

(a)     Rodney Arbuckle ("Arbuckle") in his individual capacity and as Sheriff of
        DeSoto Parish through March 2018.

(b)     Monica Cason ("Cason") in her individual capacity and in her official capacity as
        a DeSoto Parish Deputy Sheriff and employee of Defendants Arbuckle and
        Richardson.

(c)     John Clements ("Clements") in his individual capacity and in his official capacity as a DeSoto Parish Deputy Sheriff and employee of Defendants Arbuckle and Richardson.

(d)     Courtney Dowden ("Dowden") an individual of the age of majority domiciled in DeSoto Parish, Louisiana.

(e)     Adam Ewing ("Ewing") in his individual capacity and in his official capacity as a DeSoto Parish Deputy Sheriff and employee of Defendants Arbuckle and Richardson.

(f)     Jayson Richardson ("Richardson") in his individual capacity and in his capacities as a DeSoto Parish Deputy and employee of Defendant Arbuckle and in his capacity as current DeSoto Parish Sheriff.

## JURISDICTION AND VENUE

### 3.

Plaintiff has asserted claims pursuant to federal laws and the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §1331to hear and decide claims arising under the United States Constitution and laws of the United States. This court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and decide claims asserted under state law and arising from the same facts and circumstances as those forming the basis of the federal law claims.

## STATEMENT OF FACTS

### 4.

Plaintiff is the father of the minor child KJ, who was born of Plaintiff's marriage to Dowden.   Defendant Cason is Dowden's sister.  Cason is also the Chief Deputy of Defendant Sheriff Richardson and was Chief Deputy under former Sheriff Arbuckle.  Cason is the aunt of KJ and Plaintiff's former sister-in law.

5.

Plaintiff's former mother-in-law, grandmother of the child KJ and mother of Dowden and Cason, is also employed by former Sheriff Arbuckle and is an employee of current Sheriff Richardson.

6.

In the course of dissolution of the marriage between Plaintiff and Dowden, and the ensuing child custody dispute, Cason developed animosity toward Plaintiff and began to abuse her law enforcement authority to assist her sister in the custody dispute and in related civil and criminal litigation with the objective of severely restricting or terminating Plaintiff's parental rights to KJ, securing sole custody of KJ for Dowden, alienating KJ's affection toward Plaintiff and otherwise interfering with Plaintiff's right to parent KJ.  In furtherance of their objective, Cason and Dowden secured the assistance of their mother, the other Defendants, and their friends and acquaintances within the DeSoto Parish Sheriff's office and in other law enforcement agencies.

7.

Cason and Dowden later expanded their objective to include restriction or termination of Plaintiff's parental rights to his other minor children, particularly Plaintiff's minor child SK, born of a subsequent relationship.

8.

Cason has supervision and influence over a large number of DeSoto Parish Sheriff's deputies.  She has an intimate friendship with Defendant Arbuckle and strong social and professional relationships with law enforcement officials at all levels in other agencies and jurisdictions.

9.

Cason has numerous personal and professional connections among with Louisiana State Police troopers and others in positions of authority within the Louisiana State Police.  Her husband is employed by the State of Louisiana as a Louisiana State Trooper.  Her brother-in-law, Dowden's current husband, is also a Louisiana State Trooper.  Additionally, Cason has personal, social and professional connections within the DeSoto Parish Sheriff's office and other law enforcement agencies within the state.

10.

Cason has influenced  and persuaded law enforcement officers  within the DeSoto Parish Sheriff's office and law enforcement officers in other agencies to use their police authority and the powers of their offices to  maintain surveillance on Plaintiff, invade his privacy, access otherwise restricted records, harass him, arrest him without probable cause, over-charge him upon arrest, purposefully circumvent district attorney review protocol, prosecute him maliciously, defame him, and to build a record of law enforcement encounters that would make law enforcement officers, prosecutors, the judiciary and the public perceive Plaintiff falsely as an abusive spouse, an unfit parent, and a felon.

11.

The acts of abuse of law enforcement authority committed by Cason and / or others on behalf of Cason and Dowden in furtherance of their objectives to deprive Plaintiff of his parental rights became manifest in October, 2016 and have continued without interruption through the date of filing of this complaint.

12.

In October, 2016, Cason's husband, a Louisiana State Trooper, while off duty, out of uniform and out of his usual patrol jurisdiction, used his law enforcement authority to engage Plaintiff in a traffic stop.  Trooper Cason cursed at Plaintiff and implied that the he and his wife, Chief Deputy Cason, would do all within their power to help Dowden gain sole custody of KJ. He then released Plaintiff without issuing a citation.

13.

Approximately one week later on October 14, 2016, Brad Arbuckle, cousin of then-sheriff Rodney Arbuckle (who was both Cason's employer and her intimate friend) called police dispatch to report having seen Plaintiff leave a football game with the minor child KJ in his vehicle.

14.

Deputy Reggie Rowe conducted a traffic stop of Plaintiff's vehicle.   Deputy Rowe has professional connections within the Sheriff's office to Monica Cason and her mother, the aunt and grandmother of the minor child KJ, and social connections to Plaintiff's ex-wife, Defendant Dowden, mother of the minor child KJ.

15.

Rowe stopped Plaintiff on the pretext that Plaintiff had crossed a traffic line.  Plaintiff had not crossed a traffic line.   Rowe then called for State Police assistance to administer a roadside alcohol test.   When the trooper arrived, Plaintiff heard Rowe tell the trooper, "the child in the truck is Monica's nephew and this is Monica's ex-brother-in-law."

16.

Plaintiff was arrested on suspicion of Driving While Intoxicated ("DWI") with a minor child (KJ) in the vehicle.  These charges were later dismissed for lack of evidence.   Before Plaintiff  was booked on the charge, however, there was communication between Chief Deputy Cason and her sister Courtney Dowden and then between Chief Deputy Cason and other DeSoto Parish deputies resulting in additional charges being placed against Plaintiff to prevent him from obtaining bond.  In this way Cason and Dowden secured Plaintiff's detention in jail over the weekend so Dowden could take custody of KJ while Plaintiff was incarcerated.

17.

The arrest had been orchestrated by Cason and her co-conspirators to restrict or terminate Plaintiff's parental rights to KJ.    Dowden used the arrest as a basis to obtain a temporary protective order and to seek full custody of the minor child KJ.

18.

On October 18, 2016, a DeSoto Parish Sheriff's deputy engaged Plaintiff in a traffic stop, alleging falsely that Plaintiff had been swerving and driving erratically.   The deputy appeared to be searching for a reason to detain Plaintiff, search the vehicle and arrest Plaintiff.  Plaintiff told the deputy that he had a video device in his vehicle which would prove he had not violated any traffic laws.

19.

Once informed that Plaintiff had a video recording of the traffic stop, the deputy returned to his vehicle.  He appeared to be communicating with someone via cell phone or radio.  He then returned to Plaintiff's vehicle and told Plaintiff he was free to go.

20.

On November 1, 2016, a Louisiana State Trooper engaged Plaintiff in a traffic stop, claiming Plaintiff had run a stop sign.   Plaintiff's minor son, the subject of the custody dispute with Cason's sister, was in Plaintiff's vehicle.  There had been a series of cars ahead of Plaintiff at the stop sign.  Each had stopped, and then proceeded when safe to cross. When Plaintiff approached the stop, he too came to a full stop before resuming movement.   The trooper then activated the lights of his patrol unit and stopped Plaintiff's vehicle.  The trooper questioned Plaintiff about whether or not he had been drinking.   The trooper surveyed the interior of Plaintiff's vehicle and questioned him about whether or not Plaintiff's son had been properly secured in the back seat prior to the traffic stop. The trooper issued a citation to Plaintiff on a charge that would have provided Dowden ammunition in her attempt to restrict or terminate Plaintiff's rights to KJ.   Plaintiff was later exonerated of the charge.

21.

On February 2, 2017, at a court hearing, Dowden's request for a protective order was denied and dismissed due to lack of proof.

22.

The District Attorney did not prosecute the DWI charge from October 14, 2016, and it was dismissed in July 2017.

23.

In the meantime, and in continued pursuit of their objective to restrict or terminate Plaintiff's custody of the minor child KJ, Dowden and Cason began to cultivate a relationship with Plaintiff's girlfriend.  They then manipulated her into filing false criminal charges against Plaintiff and assisted her in doing so.

24.

On August 8, 2017, DeSoto Parish Deputies arrested Plaintiff on a charge of Domestic Abuse Battery with child endangerment.  Though this was a misdemeanor offense, the deputies charged Plaintiff with a felony crime.   The arrest arose from the false allegations of Plaintiff's girlfriend, who had been assisted by Cason and her co-conspirators.

25.

In the course of events on August 8, 2017, a DeSoto Parish Deputy went to a recreational area where Plaintiff's other minor children were engaged in a competitive sport, removed them from the game and the supervision of their coach, placed them in his patrol car and questioned them about Plaintiff's parenting.  This was an act in furtherance of Cason's conspiracy to deprive Plaintiff of his parental rights to KJ and an expansion of the objective of the conspiracy to encompass restriction or revocation of his parental rights to his other children and to alienate his children from him.

26.

A protective order was issued as a condition of bond on the August 8, 2017 arrest.   The complainant girlfriend later falsely alleged that Plaintiff had violated the terms of the protective order and an arrest warrant was issued for Plaintiff for violation of the protective order.

27.

On August 15, 2017 and again in open Court on August 22, 2017, the DeSoto Parish District Attorney filed documents regarding the August 8, 2017 arrest of Plaintiff reflecting that a charge of misdemeanor domestic abuse battery was being pursued against Plaintiff (this charge was later dismissed in its entirety).   Thus, it was clear that by August 15, 2017, and no later than August 22, 2017, that Plaintiff was not being prosecuted for a felony offense.

28.

On September 13, 2017, deputies in the employ of DeSoto Parish Sheriff Arbuckle published a notice on the social media platform Facebook, on the Sheriff's Crime Stoppers Facebook page, identifying Plaintiff as a felon and stating:

> "DeSoto Parish Crime Stoppers Felon of the Week Program is asking for the public's help in locating / identifying suspect(s) wanted from DeSoto Parish Area.  Ryan K. Jones of Logansport, La.   Jones is wanted for Violation of Protective Order.    Jones is described as a white male, 6'2" tall and weighing 250 pounds.  Jones is 42 years of age."

29.

The post then stated that a reward was offered and provided the contact information for the Desoto Parish Sheriff's office.

30.

The DeSoto Parish Crime Stoppers program, and its social media platform, were operated and supervised by Deputies Jayson Richardson, Monica Cason, and John Clements.

31.

Plaintiff was not being sought for the commission of a felony crime and the statement identifying Plaintiff as a felon or, at the very least, implying that he was a felon, was false.

32.

By that time Plaintiff had been formally charged with a misdemeanor only.  He was not being prosecuted for a felony.  He was not being sought for commission of a felony crime.

33.

Monica Cason, Jayson Richardson, and the Crime Stoppers investigator Captain James Clements knew that the statement that Plaintiff was a felon was a false statement.

34.

Defendants published Plaintiff's photograph and identified Plaintiff as "Felon of the Week" despite actual knowledge that Plaintiff was not wanted for the alleged commission of a felony crime.

35.

Defendants acted with actual knowledge that the identification of Plaintiff as a wanted felon was false. At the very least Defendants published Plaintiff's photograph and identified him as "Felon of the Week" deliberately, despite awareness of the probable falsity of the statement.

36.

The domestic abuse with child endangerment charge and the charge of violation of a protective order have both been resolved entirely in Plaintiff's favor with dismissals. The domestic abuse charge was tried on December 6, 2017 and Plaintiff was found not guilty.

37.

Shortly thereafter Plaintiff was warned that Deputy Monica Cason and Sheriff Arbuckle were going to get Plaintiff set up for another arrest. They did so, and Defendant Richardson promoted it in the media.

38.

On December 27, 2017, DeSoto Parish deputies arrested Plaintiff on a charge of extortion. DeSoto Parish deputies operating under orders, or at the very least the influence, of Defendants Arbuckle and Cason, and pursuant to the Sheriff's policy of targeting Plaintiff,

attempted to entrap Plaintiff in the commission of a crime for the purpose of furthering the expanded objectives of Cason's conspiracy to deprive Plaintiff of his parental rights.

39.

On March 22, 2018, a Grand Jury was convened to hear the evidence against Plaintiff on the charge of extortion. The Grand Jury returned a "No True Bill" as to Plaintiff. There was no probable cause to arrest Plaintiff and the charges were dismissed.

40.

On August 8, 2018, the charge of violation of a protective order was dismissed.

41.

Despite the fact that Plaintiff was never a wanted "felon" and despite the fact that these charges have been resolved entirely in Plaintiff's favor with full dismissals, the DeSoto Parish Sheriff continues to maintain the social media post identifying Plaintiff as "Felon of the Week." The social media post has never been removed and it continues to be accessible for view and comment by the public.

42.

As a result of the Defendants' defamatory publication of the false statement that Plaintiff was wanted by law enforcement for the commission of a felony crime, Plaintiff was subjected to hostile statements and comments about him posted on social medial.

43.

The defamatory publication also caused Plaintiff to be accosted by strangers who recognized him from the "Felon of the Week" post and who approached him or otherwise called attention to him in public settings.

44.

The defamatory publication and the fact that it continues to be accessible for view by the public jeopardizes Plaintiff's safety and the safety of his children, as members of the public perceive Plaintiff to be a felon and a fugitive.   New acquaintances have been warned by persons aware of the publications to terminate association with Plaintiff.

45.

The lengthy arrest record, public record, and social media posts about Plaintiff that have accumulated due to Cason's conspiracy and the actions of her co-conspirators taken in furtherance of the objectives of her conspiracy, have influenced law enforcement officers who are not knowingly participating in the conspiracy and will, in the future, influence law enforcement officers who know nothing of Plaintiff but what they have been told or read about him.

46.

The lengthy arrest record has created a false impression of Plaintiff in the eyes of law enforcement.  He is now viewed as a dangerous felon, a perception which unreasonably increases the risk that law enforcement officials will treat Plaintiff with a higher level of defensive aggression and hostility, and force than they would otherwise use in any encounter with him. This places Plaintiff and his family at higher risk of harm in any encounter with law enforcement.

47.

In February 2018, Plaintiff was detained for a traffic stop.  As Plaintiff remained seated on the driver's side of the vehicle, he could see the officer approaching the vehicle already wary, with his had already hovered over his weapon.   As this would otherwise have appeared to be an

ordinary traffic stop with no reason for an officer to anticipate the need to use deadly force, the officer's conduct suggested he had obtained information about Plaintiff's arrest record prior to approaching Plaintiff's vehicle. The officer questioned Plaintiff and scanned the interior of the vehicle. He then released Plaintiff without citation.

48.

On another occasion a DeSoto Parish Deputy conducting surveillance of Plaintiff's home, observed Plaintiff in the front yard of his home with two of his sons. The Deputy pulled into the driveway and exited his patrol unit with his hand hovered over his weapon, issuing the command, "Don't move!" He questioned Plaintiff, identified the children who were with Plaintiff, but did not arrest Plaintiff.

49.

On another occasion a DeSoto Parish Deputy recognized Plaintiff and stopped him, stating that he thought there was a warrant for Plaintiff's arrest. There was no warrant.

50.

The unabated acts of harassment, malicious prosecutions, defamation and other wrongful acts, as described above, separately and in furtherance of the conspiracy to deprive Plaintiff of his parental rights, have caused Plaintiff to incur substantial expense in child custody and criminal defense litigation, caused him emotional distress, extreme embarrassment, and caused friends, the public, the judiciary, and law enforcement officers to perceive Plaintiff unfavorably.

51.

The on-going pattern of harassment and the unfavorable perceptions of Plaintiff that this has created for the judiciary and law enforcement have caused Plaintiff to suffer frequent stops by law enforcement officers and subsequent officer safety searches, longer post-arrest and pre-

trial detentions than would otherwise have occurred, and higher bail amounts than would otherwise have been set.  Plaintiff has also been forced to incur substantial criminal defense costs to retain counsel to defend him against the numerous criminal and civil proceedings Cason's conspiracy generated.

52.

The facts alleged in Paragraphs 1-51, above, constitute grounds for the causes of actions asserted and set forth herein, below.

COUNT I.
DEFAMATION
La. Civil Code art. 2315

53.

Defendants Cason, Richardson and Clements defamed Plaintiff by causing a social media posting to be made on the DeSoto Parish Sheriff's Crime Stoppers' platform identifying Plaintiff as Felon of the Week.

54.

On September 20, 2017, Defendant Ewing defamed Plaintiff by making the false statement to Plaintiff's ex-wife that Plaintiff was a drug dealer and telling her that because he was a drug dealer she needed to obtain custody of her children to protect them from him.

55.

These statements were false and defamatory *per se* and malice is presumed.

56.

The false statement identifying Plaintiff as the Crime Stoppers Felon of the Week remains visible on the Crime Stoppers platform and has been viewed with regularity since its original posting and frequently commented upon by viewers.  Each time a viewer accesses the

post creates a new and separate publication of the defamatory statement attributable to Defendants Cason, Richardson and Clements.

57.

Defendants are liable for each re-publication of the defamatory statements and for their failure to remove the posting or cause it to be removed despite numerous opportunities to do so (a) at any time after Plaintiff was arrested, and no longer wanted; (b) at any time after it was obvious that Plaintiff was wanted only on a misdemeanor charge and not a felony and that he was not a felon, and (c) at any time after Plaintiff had been cleared of all referenced charges.

58.

Defendants Arbuckle, Cason, Richardson, Clements and Ewing are liable to Plaintiff for all damages Plaintiff has sustained and will sustain arising from the publication and re-publication of false and defamatory statements about Plaintiff.

COUNT II

INVASION OF PRIVACY
La. Civil Code art. 2315

59.

Plaintiff asserts a claim for damages arising from the invasion of his privacy.

60.

Defendants Cason, Arbuckle, and Richardson, acting individually and through persons over whom they have employment authority, have invaded Plaintiff's privacy by conducting surveillance, accessing private information about Plaintiff for personal use, and presenting Plaintiff to the public in a false light.

61.

When serving as Sheriff, Defendant Arbuckle permitted Cason and Richardson to invade Plaintiff's privacy, thus he is vicariously liable for the acts of his subordinate employee committed in the course and scope of her employment and with his knowledge, or under his permissive management.

62.

Defendant Richardson, in his capacity as DeSoto Parish Sheriff, permitted Cason to continue to engage in acts that were invasive of Plaintiff's privacy and that presented Plaintiff in a false light.

63.

Defendants Cason, Arbuckle, and Richardson are liable to Plaintiff for damages arising from invasion of privacy.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARISING FROM CUMULATIVE HARASSMENT
La. Civil Code art. 2315

64.

Plaintiff asserts a claim for damages arising from the intentional infliction of emotional distress resulting from the cumulative effects of continuous harassment by law enforcement and their continuous efforts to interfere with his parenting of KJ, and later SK, and to restrict or terminate his parental rights to his minor children.

65.

Defendant Cason, acting in her individual capacity and in her official capacity as a management-level deputy of DeSoto Parish Sheriffs Arbuckle and Richardson, engaged in a

series of acts which Defendant Cason intended, or should reasonably have known, would cause the Plaintiff serious emotional distress.

66.

These acts included, but were not limited to Cason's abuse of her authority as a law enforcement officer and management level employee of the DeSoto Parish Sheriff to influence other deputies to surveil Plaintiff, detain him for observation and questioning without probable cause, to arrest him without probable cause, to charge him with a felony crime when it was obvious that the facts supported only a misdemeanor, to circumvent protocols established by the district attorney's office that were designed to protect against arrests that could not or would not meet prosecution criteria, and to engage in harassment of Plaintiff and to conspire to have others harass Plaintiff all for the purpose of having Plaintiff suffer the distress of living under the constant day-to-day threat that his shared custody of his son would be restricted or revoked.

COUNT IV

EMPLOYER LIABILITY

67.

Defendant Rodney Arbuckle, in his capacity as DeSoto Parish Sheriff, was the employer of Defendant Cason. Arbuckle set policy for his office and his employees and was the appointing authority for purpose of employment, discipline and dismissal of deputies.

68.

In his capacity as employer and appointing authority Arbuckle had actual knowledge of Cason's animus toward Plaintiff and that she was using the relationships and resources of her office to harass Plaintiff and with the objective of terminating Plaintiff's parental rights to KJ,

and later to SK also, and he permitted her to do so within the course and scope of her employment.

69.

Defendant Arbuckle, in his capacity as Cason's employer, is liable for the continuous torts she committed during the course and scope of her employment and all damages Plaintiff sustained as a result of the continuous torts.

70.

Defendant Arbuckle, in his capacity as Cason's employer and the employer of Defendant Jayson Richardson (then a deputy) is liable for each publication and re-publication of the defamatory communication made by Richardson, Cason, and other DeSoto Parish deputies responsible for falsely identifying Plaintiff as a felon in the Crime Stoppers Felon of the Week post.

71.

Defendant Jayson Richardson, in his capacity as the current DeSoto Parish Sheriff, is the employer of Defendant Cason.  Defendant Richardson sets policy for his office and his employees and is the appointing authority for the purpose of employment, discipline and dismissal of deputies.

72.

Defendant Richardson, in his capacity as Cason's employer, had actual knowledge of Cason's animus toward Plaintiff and that she was using the relationships and resources of her office to harass Plaintiff and with the objective of terminating Plaintiff's parental rights to KJ, and later to SK also, and he permitted her to do so within the course and scope of her employment.

73.

Defendant Richardson, in his capacity as Cason's employer, is liable for the continuous torts she committed during the course and scope of her employment.

COUNT V.

UNCONSTITUTIONAL DENIAL OF EQUAL PROTECTION
42 U.S.C. §1983

74.

Defendant Cason, acting under color of law, violated Plaintiff's rights to equal protection, as secured to him under the Fourteenth Amendment to the United States Constitution, by abusing her authority and influence as a law enforcement officer for purposes of personal vindictiveness.

75.

Cason's personal animosity toward Plaintiff placed Plaintiff in a Class of One, as she singled him out for selective enforcement and also for personal vindictiveness.

76.

Cason is sued in her individual capacity, and in her official capacity as a deputy of ex-officio Sheriff Rodney Arbuckle and current DeSoto Parish Sheriff Jayson Richardson.

77.

Defendant Arbuckle, in his capacity as DeSoto Parish Sheriff, ex-officio, established a policy within his office that permitted Cason to discriminate against Plaintiff on the basis of her personal animosity toward him. Arbuckle is liable in his official capacity for the unconstitutional policies of his office that permitted Cason to discriminate against Plaintiff in violation of Plaintiff's right to equal protection.

78.

Defendant Richardson, in his capacity as DeSoto Parish Sheriff has maintained the unconstitutional policies of his predecessor in office and has continued to permit Cason to discriminate against Plaintiff on the basis of her personal animosity toward him and the unconstitutional policy that permits other deputies under his control to engage in selective enforcement as to Plaintiff.  Richardson is liable in his official capacity for the unconstitutional policies of his office that permit Cason and other deputies to discriminate against Plaintiff in violation of Plaintiff's right to equal protection.

79.

Plaintiff seeks, and is entitled to recover, compensatory damages, reimbursement of fees and costs incurred in civil and criminal defense litigation caused by Defendants, costs of litigation, and reasonable attorneys' fees.  The Defendants sued in their individual capacities are also liable for punitive damages.

## COUNT VI.

### DEPRIVATION OF FIFTH AND FOURTEENTH AMENDMENT LIBERTY INTEREST
42 U.S.C. Section 1983

80.

Plaintiff's right to parent his minor sons is a liberty interest protected by the Fifth and Fourteenth Amendments to the United States Constitution.

81.

Defendant Cason, acting under color of law, violated Plaintiff's rights to liberty as secured to him under the Fifth and Fourteenth Amendments to the United States Constitution, by abusing her authority and influence as a law enforcement officer for purposes of interfering with

Plaintiff's parental rights, restricting Plaintiff's parental rights, and /or attempting to terminate Plaintiff's parental rights to the minor child KJ, and later to the minor child SK also.

82.

Cason is sued in her individual capacity, and in her official capacity as a deputy of ex-officio Sheriff Rodney Arbuckle and current DeSoto Parish Sheriff Jayson Richardson.

83.

Defendant Arbuckle, in his capacity as DeSoto Parish Sheriff, established a policy within his office that permitted Cason to interfere with and deprive Plaintiff of his liberty interests. Arbuckle is liable in his official capacity for the unconstitutional policies of his office that permitted Cason to deprive Plaintiff of liberty interests.

84.

Defendant Richardson, in his capacity as DeSoto Parish Sheriff has maintained the unconstitutional policies of his predecessor in office and has continued to permit Cason to deprive Plaintiff of liberty interests. Richardson is liable in his official capacity for the unconstitutional policies of his office that permit Cason and other deputies to discriminate against Plaintiff in violation of Plaintiff's right to equal protection.

85.

Plaintiff seeks, and is entitled to recover, compensatory damages, reimbursement of fees and costs incurred in civil and criminal defense litigation caused by Defendants, costs of litigation, and reasonable attorneys' fees. The Defendants sued in their individual capacities are also liable for punitive damages.

COUNT VII.
CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS
42 U.S.C. §1983

86.

Defendant Cason, acting under color of law and pursuant to the unconstitutional policies of her employer, Sheriff Arbuckle and later Sheriff Richardson, agreed and conspired with Louisiana State Trooper Cason, with law enforcement officers and officials from other agencies, with Dowden, and with other civilians to deprive Plaintiff of his rights to liberty and equal protection under the United States Constitution.

COUNT VIII.

UNCONSTITUTIONAL DENIAL OF EQUAL PROTECTION and LIBERTY INTERESTS
Louisiana Constitution Article 1, Section 3, actionable through La. Civil Code art. 2315.

87.

The facts also establish claims against Defendants Cason, in her individual and official capacities, Arbuckle in his official capacity, and Richardson in his individual and official capacities, for violations of Plaintiff's right to Equal Protection and his liberty interest in a parental relationship with his children, secured to him under Louisiana Constitution Article 1, Section 3.

88.

Plaintiff seeks, and is entitled to recover, compensatory damages, reimbursement of fees and costs incurred in civil and criminal defense litigation caused by Defendants, costs of litigation, and reasonable attorneys' fees.

89.

Plaintiff requests a jury trial.

WHEREFORE, Plaintiff prays that his complaint be deemed and sufficient and that upon the conclusion of all due proceedings that a judgment be entered against Defendants awarding Plaintiff full relief and damages, as sought herein, and all other legal and equitable relief to which Plaintiff may be entitled including compensatory damages, punitive damages against Defendants Cason, Arbuckle, Richardson, Ewing and Clements, reimbursement of fees and costs incurred in civil and criminal defense litigation caused by Defendants, costs of litigation, pre-judgment interest on State law claims, and reasonable attorneys' fees, where allowed by law.

Respectfully submitted this __11th__ day of September, 2018

DOWNER, JONES, MARINO & WILHITE, L.L.C.


By: ___/s/Pamela R. Jones_____

**Pamela R. Jones, Bar Roll No. 19640**

American Tower
401 Market Street, Suite 1250
Shreveport, Louisiana 71101
Telephone: 318-213-4444
Facsimile: 318-213-4445
Email: pjones@dhw-law.com

**ATTORNEYS FOR PLAINTIFF**